IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRIAN J. KELLEY, DENISE D. BOYD, YVONNE S. EMOUS and BETTIE M. HOUSLEY individually and on behalf of all of those similarly situated, Plaintiffs, | ) | |
| v. | ) | CASE NO: 1:07-CV-1245-SEB-IMS |
| MED-1 SOLUTIONS, LLC, WILLIAM J. HUFF, FRANCIS R. NIPER, COURTNEY GABER and RICHARD R. HUSTON, Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM**

## I. INTRODUCTION

Under the Rooker-Feldman Doctrine, lower federal courts may not sit as appellate tribunals and review the validity of state court judgments. Thus, when a plaintiff attempts to contest a facially valid state court judgment in federal court, the Rooker-Feldman Doctrine denies the federal district court jurisdiction to hear the claim. Here, Plaintiffs seek damages arising from four Indiana small claims court judgments wherein the state court included an award of attorney's fees. The Plaintiffs contend that the Defendants are liable under the Fair Debt Collection Practices Act ("FDCPA") and various state tort theories for seeking recovery of these attorney's fees.

This Court, however, cannot grant the plaintiffs the relief they seek without contesting the validity of the state court's award of attorney's fees. This is precisely what the Rooker-

Feldman Doctrine prohibits. Consequently, this Court lacks subject matter jurisdiction over this case.

Additionally, if this Court finds that it has subject matter jurisdiction over any portion of the Plaintiffs' complaint, this case should still be dismissed because Plaintiffs have failed to state a valid claim under the FDCPA or any state tort theory.

This cause should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. STATEMENT OF RELEVANT FACTS

Defendant Med-1 Solutions, LLC ("Med-1") is debt collector whose primary business is the collection of consumer debts owed to health care providers. (Complaint, ¶¶ 8, 12). Med-1 filed small claims actions in the Hamilton County Superior Court against each of the plaintiffs for debts allegedly owed to St. Vincent Carmel Hospital, Inc. (Complaint, ¶¶ 4-7; 13; Exhibits A-D). Defendants Niper, Gaber and Huston are lawyers licensed to practice in Indiana, and are all salaried employees of Med-1. (Complaint, ¶ 10).

Med-1 obtained a judgment in the Hamilton County Superior Court against Plaintiff Kelley in the amount of $892.09, which included $375.00 in attorneys' fees. (Complaint, ¶¶ 15-16).

Med-1 obtained a judgment in the Hamilton County Superior Court against Plaintiff Boyd in the amount of $450.00, which included an undisclosed amount in attorneys' fees. (Complaint, ¶¶ 18-19).

Med-1 obtained a judgment in the Hamilton County Superior Court against Plaintiff Emous in the amount of $3,658.50, which included $350.00 in attorneys' fees. (Complaint, ¶¶ 21-22).

Med-1 obtained a judgment in the Hamilton County Superior Court against Plaintiff Housley in the amount of $2,421.45, which included $375.00 in attorneys' fees. (Complaint, ¶¶ 24-25).

There is no allegation in the complaint that any of these judgments have been set aside by the Hamilton County Superior Court. There is no allegation that any of these judgments have been appealed.

## III. STANDARD OF REVIEW

Federal courts only have the power to decide matters expressly authorized by Article III of the Constitution and statutes enacted by Congress. Transit Exp., Inc. v. Ettinger, 246 F.3d 1018, 1023 (7th Cir. 2001), *citing* Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). On a motion to dismiss for lack of subject matter jurisdiction, a District Court must accept the complaint's well-pleaded factual allegations as true, and draw reasonable inferences from those allegations in plaintiff's favor. Ettinger, 246 F.3d at 1023.The District Court may look beyond the simple jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993) (per curium).

A motion to dismiss for failure to state a claim tests the sufficiency of a complaint. A District Court must take the plaintiff's factual allegations as true and draw all reasonable

inferences in his favor. Brown v. Budz, 398 F.3d 904, 908-09 (7th Cir. 2005). A complaint should be dismissed for failure to state a claim under FRCP 12(b)(6) if no relief could be granted under any set of facts. Id. Any written instruments attached to the complaint are considered a part of the complaint. Moranski v. General Motors, 433 F.3d 537, 539 (7th Cir. 2005), *citing* Fed.R.Civ.P. 10(c).

## IV. ANALYSIS

The first issue is whether Med-1 and its salaried attorneys were entitled to recover attorney's fees when collecting Plaintiffs' delinquent debts for St. Vincent Carmel Hospital, Inc. ("St. Vincent"). The Plaintiffs claim that the fee award was improper and seek damages for this alleged violation of state and federal law.

For this Court to award the Plaintiffs damages, however, it must conclude that the state court erred in awarding fees to Med-1 and its attorneys. This is an attempt to bring a collateral attack on a facially valid state court judgment before a federal district court. Consequently, Plaintiffs' claims are barred by the Rooker-Feldman Doctrine, depriving this court of subject matter jurisdiction.

### A. Under the Rooker-Feldman Doctrine, This Court Lacks Subject Matter Jurisdiction over this Case. Consequently, this Court Should Grant Defendants' Motion to Dismiss in its Entirety.

Under the Rooker-Feldman Doctrine, lower federal courts do not have subject matter jurisdiction over claims which seek review of state court judgments. Long v. Shorebank Development Corp., 182 F.3d 548, 554 (7th Cir. 1999), *citing* Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v.

Feldman, 460 U.S. 462, 482-86, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Where a plaintiff seeks review of a state court judgment, it must pursue the appellate process through the state court system and then directly to the United States Supreme Court. Long, 182 F.3d at 554, *citing* Centres, Inc. v. Town of Brookfield, 148 F.3d 699, 701-02 (7th Cir. 1998). The doctrine applies to claims actually raised in the state tribunal as well as claims that are inextricably intertwined with state court determinations. Long, 182 F.3d at 554; Epps v. Creditnet, Inc., 320 F.3d 756, 759 (7th Cir. 2003). Subsequent federal litigation is "inextricably intertwined" with prior state court litigation whenever success in the federal forum would require the Court to overturn a prior state court judgment. Epps, 320 F.3d at 759.

Epps demonstrates the proper application of the Rooker-Feldman Doctrine. In Epps, two plaintiffs provided checks to a finance company holding the rights to their automobile loans. 320 F.3d at 757. Both checks were returned unpaid by the drawee banks. Id. The finance company filed separate suits in small claims court in Indiana, seeking the amount of the checks, as well as treble damages under the Indiana statute criminalizing check deception. Id. at 757-58. The finance company obtained judgments against both defendants, which included treble damages. Id. at 758. One year after entry of judgment, the debtors filed a putative class action in the Southern District alleging that the finance company violated the Indiana Uniform Consumer Credit Code ("IUCCC") in seeking treble damages. Id. The plaintiffs asked the District Court to "cancel or make restitution of the excess charges." Id. Their prayer for relief specifically asked the District Court to set aside the judgment of the Indiana small claims court and refund the damages assessed. Id. at 759. The Seventh Circuit held that the federal district court did not have jurisdiction over the claim as the plaintiffs' claim was nothing more than a request for a lower federal court to review and possibly reverse the judgment of a state court. Id. at 761.

The Epps Court's reasoning was based upon the fact that the damages asserted under the IUCCC arose upon the entry of the state court judgment, and a federal court could not award damages under the IUCCC without a finding that the state court judgment was in error. Id. at 759-60. Although the plaintiffs attempted to argue that the "claim" arose at the time of filing of the suit, and not at the time of judgment, the Seventh Circuit rejected this argument. Id. at 759. The Court found this argument specious because, as stated by the Court:

> The Plaintiffs were not liable under the civil bad check statutes until the state court entered judgment against them. Indiana law makes treble damages available in a civil action, but damages do not lie until a court has found liability, determined damages and entered judgment… Therefore, the "charge" against which the Plaintiffs' current suit was filed did not come into existence prior to judgment, and the Plaintiffs' current suit has as its principal purpose the invalidation of that judgment. Contrary to the assertions of [the Plaintiffs], if the underlying Small Claims state court action had never gone to judgment, there would be no "charge" and, consequently, nothing to be set aside by the present suit. Id. 759-60.

Judge David Hamilton of this Court reached an identical conclusion in a case with facts very similar to the facts of the instant matter. Bullock v. Credit Bureau of Greater Indianapolis, Inc., 272 F.Supp.2d 780 (S.D.Ind. 2003). Bullock involved a putative class action against an attorney for alleged FDCPA violations in his filing of Indiana small claims Notice of Claims. Id. at 781. In Bullock, the plaintiffs obtained "payday loans" from a finance company. Id. The plaintiffs presented post-dated checks at the time of obtaining the loan. Id. When the finance company presented the checks for payment, they were dishonored. Id. The defendant-attorney filed small claims actions against the plaintiffs on behalf of the finance company. Id. The plaintiffs contended that the attorney committed the following FDCPA violations: (1) he sought and collected treble damages when treble damages were prohibited by Indiana law; (2) he filed the lawsuit in the name of an improper party and not in the name of the correct corporate entity; and (3) the underlying loans were void under Indiana law. Id. at 782. Judge Hamilton, relying

upon the Seventh Circuit's decision in Epps found all three claims barred by Rooker-Feldman. Id. at 783. He noted,

> The state court might have been right and it might have been wrong under Indiana law. But this court could not rule in plaintiff's favor without holding that the state court erred. Again, that is what the Rooker-Feldman doctrine prohibits. Id.

These decisions provide the framework for the present dispute. Plaintiffs have essentially brought two categories of claims. First, they claim that the state court judgments are excessive and include attorneys' fees that were improperly awarded. Second, they claim that there were FDCPA violations by the defendants before entry of these judgments when the Notices were filed asking for improper relief.

As to the first claim, it is clear that under the Rooker-Feldman Doctrine and Epps, any claims specifically asking for modification or refund of the state court judgments are barred. This court certainly lacks jurisdiction over those portions of the plaintiffs' complaint seeking to modify or refund monies paid on facially valid state court judgments. The remaining issue is whether this Court has jurisdiction over the plaintiffs' claims to damages which are allegedly premised solely upon the initial filings.[1]

### 1. *The Rooker-Feldman Doctrine and the Seventh Circuit's Decision in Epps Bar the Plaintiffs' Claims for Modification and/or Refund of the State Court Judgments*

[1] Such a claim would only be applicable to Plaintiffs Kelley and Boyd. The original Notice of Claim was filed against Plaintiffs Emous and Housley on August 15, 2006. The subject complaint was filed on September 27, 2007. The FDCPA contains a one year statute of limitation from the date the alleged violation occurred. 15 U.S.C. § 1692k(d). Plaintiffs Emous and Houlsey thus cannot maintain actions for FDCPA violations premised upon the Notice of Claim and the initial request for attorney's fees.

The plaintiffs raise six individual counts against the defendants, all in some manner premised upon the factual and legal contention that the attorneys' fees included in the state court judgments were not permitted by Indiana law. Plaintiffs' claims are,

1. Violation of 15 U.S.C. § 1692e
2. Violation of 15 U.S.C. § 1692f
3. Unjust Enrichment
4. Fraud
5. Money Had and Received[2]

The first two counts assert FDCPA violations in the collection of the debts, arguing that the Notices of Claims improperly sought attorneys' fees to which Med-1 was not entitled.[3] The remaining counts seek recovery of the actual fees included in the judgment.

In Count III for Unjust Enrichment, Count IV for Fraud and Count V for Money Had and Received, the plaintiffs seek to recover "damages… in a sum not less than all attorney fees paid to the Defendants themselves and to all others similarly situated." (Complaint, pp. 9, 11, 12). In other words, the Plaintiffs ask this Court to declare that the Hamilton County Superior Court erred in awarding the attorneys' fees and that these sums should be returned. This was the precise situation presented in Epps, where the plaintiffs sought rescission of the state court judgment and refund of a portion of the judgment. The Epps Court stated that lower federal courts lack jurisdiction to "cancel or make restitution of the excess charges" contained in Indiana small claims judgments. 320 F.3d at 758. Thus, this Court unquestionably lacks jurisdiction over

[2] The plaintiffs additionally seek recovery individually against defendant Huff, arguing that they can pierce Med-1's corporate veil with respect to him. The plaintiffs also raise potential class causes of action. However, both of these counts necessarily require that plaintiffs prevail on one of the five underlying causes of action listed above.

[3] As indicated, only two of the four plaintiffs have timely filed this claim.

those counts of the plaintiffs' complaint asking the Court to declare portions of the Hamilton County Superior Court judgments incorrect and lacks jurisdiction over the claims seeking to recover those sums from the defendants.[4]

2. *The FDCPA Claims Are Inextricably Intertwined with the State Court Judgments, and Rooker-Feldman Bars Plaintiff's Claims under Sections 1692e and 1692f of the FDCPA*

Once the Court disposes of the claims seeking modification or refund of the state court judgments, the plaintiffs are left only with their claims that the original notice of claim was incorrect. In this respect, their FDCPA claims, if they are to survive at all, must be construed very narrowly. Plaintiffs have alleged violations of § 1692e for false representations and 1692f for unfair or unconscionable collection actions. Under Epps, and as argued in the preceding subsection, the plaintiffs cannot recover the attorneys' fees, they can only for damages independent of the judgment.

In this respect, Bullock is instructive. It addressed FDCPA claims premised upon the representations in a Notice of Claim, and not the ultimate judgment. Bullock found that the Court lacked jurisdiction over such claims. The claims raised by the Plaintiffs in this case were specifically addressed in the Bullock opinion. The Plaintiffs in Bullock attempted to argue that the filing of a Notice of Claim could create an independent claim not tied to the judgment. Id. The opinion rejected this argument, noting that "deciding plaintiffs' claims of FDCPA violations by Gonon in this case would require this court to decide whether the state court erred in issuing its judgments. That is exactly what the Rooker-Feldman doctrine prohibits." Id. Where a federal

[4] The plaintiffs have not specifically sought recovery of the attorneys' fees actually paid pursuant to the state court judgments in the two FDCPA counts. Defendants certainly extend this argument to the FDCPA counts to the extent the plaintiffs claim they are entitled to refunds under the FDCPA as well.

court has to declare that a state court judgment was *incorrect* in order to award damages, Rooker-Feldman deprives the Court of subject matter jurisdiction.

Here, the plaintiffs seek to recover damages under the FDCPA, stating that the defendants violated § 1692e and § 1692f by requesting and collecting attorneys' fees to which they were not entitled. However, the state court found that the defendants WERE entitled to the attorneys' fees and accordingly awarded a judgment that included the attorneys' fees. This court cannot find a violation of § 1692e and § 1692f without finding that the Hamilton County Superior Court erred in awarding attorneys' fees. This is precisely what the Rooker-Feldman Doctrine prohibits. This Court lacks subject matter jurisdiction over the plaintiffs complaint, and accordingly, this Court must dismiss plaintiffs' complaint in its entirety under Federal Rule of Civil Procedure 12(b)(1).

### B Even if this Court Finds it Has Subject Matter Jurisdiction, Dismissal is Still Appropriate because Plaintiffs Have Failed to State a Claim upon Which Relief Can Be Granted

#### 1. *The Attorneys' Fees Requested and Collected by the Defendants Were "Reasonable" under Indiana Law, and There is No Violation of Sections 1692e and 1692f of the FDCPA*

If this Court concludes that it has subject matter jurisdiction, dismissal of the FDCPA claims is still appropriate. Plaintiffs' FDCPA claims are premised upon the faulty legal assumption that the attorneys' fees awarded by the Hamilton County Superior Court were not "reasonable." In order to find that the defendants' statements to the state court were misleading, or that the collection practices were unconscionable, this Court must find that the attorneys' fee awards requested (and granted by the state court) were unreasonable. Without such a finding, it cannot be improper to request and collect the fees.

The plaintiffs advance two arguments in support of the illegality of the attorneys' fees requested. First, they claim that Med-1 did not have a contractual right to seek the fees. Second, they claim that if Med-1 were authorized to collect fees, the fees requested and collected were not reasonable under Indiana law.

### (A) The Plaintiffs Cannot Use the FDCPA to Raise Real Party in Interest Defenses Appropriately Directed to the Indiana Small Claims Court

The Notice of Claim states through the attachments that the small claims lawsuits were filed for unpaid medical bills owed to St. Vincent Carmel Hospital, Inc. ("St. Vincent") The attached contract demonstrates that the plaintiffs contractually agreed that "if your account is forwarded to a collection agency or attorney… you will be responsible for any court costs, reasonable attorney fees, and interest as allowed by Indiana statute, incurred in the collection of your account." (Complaint, Exhibits A-D). The face of the complaint in this action demonstrates that the plaintiffs owed St. Vincent Hospital of Carmel, Inc. money on delinquent medical bills and reasonable attorneys fees incurred in collection on those bills. Plaintiffs further state in their complaint—which of course must be conceded as true on this motion—that Med-1 had a contract with St. Vincent Carmel Hospital, Inc. that permitted it to apply the first monies received on collection to attorneys' fees. (Complaint, ¶ 28).

Yet, plaintiffs assert that "Med-1" did not have a right to seek fees under this contract as it had no "ownership interest" in the medical bills. Plaintiffs essentially contend that although they owed St. Vincent reasonable attorneys fees, they did not owe those fees to its collection

agency.[5] This claim is really nothing more than an argument that Med-1 was not the real party in interest in the state court action and that it should have disclosed that it was acting as the hospital's agent. Such an argument is foreclosed by the Rooker-Feldman Doctrine. Bullock v. Credit Bureau of Greater Indianapolis, Inc., 272 F.Supp.2d 780, 783 (S.D.Ind. 2003) (a federal claim under the FDCPA that a state court entered judgment in favor of an improperly named plaintiff is barred by the Rooker-Feldman Doctrine).

(B) The Attorneys Fees Requested, Awarded and Collected Were Reasonable

Plaintiffs' second FDCPA argument is that even if Med-1 were permitted to request, obtain and collect reasonable attorneys' fees, the fees that it actually requested and collected were not reasonable under Indiana law.

In Indiana, a reasonable attorney fee award is a question of fact to be determined by the trial court based upon the evidence presented at trial. Leibowitz v. Moore, 436 N.E.2d 899, 900 (Ind.Ct.App. 1982). In routine cases involving relatively small amounts, an Indiana trial judge may take judicial notice of the reasonableness of the fee. Berkemeier v. Rushville Nat'l Bank, 438 N.E.2d 1054, 1058 (Ind.Ct.App. 1982); Leibowitz, 436 N.E.2d at 900 (judicial notice may be employed in "mundane affairs of the court involving relatively modest sums."). Where the case is not routine or does not involve a relatively small amount, the attorneys' fees must be proven just as any other element of damages. Leibowitz, 436 N.E.2d at 900; Berkemeier, 438 N.E.2d at 1058; Smith v. Kendall, 477 N.E.2d 953, 954 (Ind.Ct.App. 1985) ("The court's (or

[5] The Plaintiffs do not contend that Med-1 was not entitled to recover the delinquent debt, or the late charges assessed by St. Vincent.

jury's) determination of a reasonable attorney's fee must be based on evidence presented at trial which fairly tends to prove the amount due.").

An award of attorneys' fees on collection of a note or contract "is part of the judgment paid to the plaintiff. *It is not an award of fees to the attorney*." Kendall, 477 N.E.2d at 955 (Ind.Ct.App. 1985) (emphasis added). "The fee which an attorney expects from a client is the subject of a separate agreement between the attorney and client and is not directly dependent on whether the court awards fees or the amount of the fees awarded."[6] Id. *See* Clark's Pork Farms v. Sand Livestock Systems, Inc., 563 N.E.2d 1292, 1300-01 (Ind.Ct.App. 1990), *quoting* Ulibarri v. Gee, 106 N.M.637, 639, 748 P.2d 10, 12 (1987) ("the award of an attorney's fee, like the award of other costs of litigation, is not the same question as the determination of reasonableness of a fee between the attorney and his client."); Korellis Rooking, Inc. v. Stolman, 645 N.E.2d 29, 33-34 (Ind.Ct.App. 1995) (award of reasonable attorneys' fees on mechanic's lien is separate from agreement between attorney and client).

As a matter of law, $375 is not an "unreasonable" fee for the filing and prosecution of a small claims action to judgment, and the plaintiffs have not so argued. They do not claim that $375 is inappropriate based upon time and hourly rate. They do not claim that the defendants failed to introduce competent evidence supporting that the fees were reasonable in the community.[7] Instead, the plaintiffs claim that an otherwise reasonable fee becomes unreasonable

---

[6] This analysis is essentially identical to the regime applied in the federal system—in 42 U.S.C. § 1988 cases, for example; *see* Evans v. Jeff D., 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed. 747 (1986).
[7] The defendants contend that the filing of a small claims action for collection is the very type of routine or mundane proceeding that Indiana courts may utilize judicial notice to award fees. However, the plaintiffs have not alleged that the award was not supported by competent evidence.

based upon the agreement existing between the attorney and the client. This directly contradicts the long-standing rules quoted above.

Thus, the Plaintiffs' argument that the fees were unreasonable rests upon a faulty premise. They assert in ¶ 38 of their complaint,

> That the value, or determination of the reasonableness of attorney fees payable to [the attorney defendants] were the sums that such attorneys actually retained for the services rendered in the collection of the consumer-debt.

In other words, plaintiffs claim that the attorney fee award must equal the agreement between the attorney and the client. This is simply not true under controlling Indiana law.[8] The agreement between attorney and client has nothing to do with whether a fee award to the client is a reasonable *court-awarded* fee.

The lineage of Indiana decisions on attorneys' fee awards shows that they must be reasonable for the community. And when awarded, they belong to the client. What St. Vincent, Med-1 and the in-house Med-1 attorneys agree to do with the award after collection has nothing to do with whether it is a "reasonable" fee under Indiana law.

The facts of the complaint show that Med-1 attorneys file collection actions on behalf of St. Vincent. The Med-1 attorneys seek $350 to $375 in attorneys' fees. St. Vincent pays those fees back to Med-1. (Complaint, ¶ 28) ("Med-1 has an agreement with St. Vincent's Hospital…

---

[8] The fallacy of the argument is further illustrated by the brief plaintiffs filed in support of their motion for summary judgment. They claim in that filing that "The true value of the attorney's time and effort in this case should be judged not by the total fee collected, but rather by the attorney fee actually retained by the attorney in the collection process." (Brief, p. 15). In this respect, plaintiffs appear to go a step further, and state that only the percentage of the fee actually pocketed by the attorney can be requested, ignoring such matters as overhead and support staff salaries. The plaintiffs have cited no authority for this bold proposition, and it directly contradicts the longstanding Indiana rule stating exactly the opposite: that a "reasonable" attorney fee awarded on collection of a note or debt should not be measured by the agreement between the attorney and client. Leibowitz, 436 N.E.2d at 900, *citing* U.S. Aircraft Financing, Inc. v. Jankovich, 407 N.E.2d 287 (1980) (the fact that the attorney's client agreed to pay a certain fee was not controlling as to reasonableness of an award by the Court); Kendall, 477 N.E.2d at 955.

that provided, in part, that the first monies received by Med-1 from a consumer-debtor would be retained by Med-1 for payment of attorney fees and court costs."). How Med-1 elects to disburse those fees towards legal overhead, legal salaries and incentive bonuses is irrelevant to the question whether the fees are "reasonable" under Indiana law.

By analogy, suppose a law firm in Indianapolis charges its collection-clients $375 for each small claims collection action filed and prosecuted. This hypothetical law firm then assigns the handling of the small claims proceedings to a novice associate. This associate is paid a salary by the firm, with no bonus directly tied to the collection proceedings. The attorney asks for, and is granted $375 for attorneys' fees on every small claims judgment. In such a circumstance, the debtor-defendant cannot reasonably suggest that he is not required to pay the $375 attorney fee because the associate attorney signing the pleadings is not personally receiving the fee. The agreement between the associate and his law firm is irrelevant to the question whether the fee awarded by the Court is reasonable. Yet, that is exactly what the plaintiffs claim in their complaint.

The plaintiffs additionally try to confuse the issue by alleging that there was a vaguely defined "fee-sharing" agreement existing between the defendant-attorneys and non-attorney employees of Med-1, including defendant Huff.[9] (Complaint, ¶¶ 29-33). They apparently intend to argue that this agreement violates the Rules of Professional Conduct for attorneys in Indiana,

---

[9] The defendants are confident that if this case proceeds, the evidence will demonstrate that their actions were in no manner a violation of the Rules of Professional Conduct and that all of the fees collected were applied to actual legal costs, such as overhead expenses for the legal department, legal support staff salaries, and the like. In this respect, the plaintiffs' claim that only 20-25% of the fees collected were used as "attorneys' fees" because that is the incentive bonus awarded as take-home pay to the salaried-attorney is illogically narrow. However, for the purposes of a motion to dismiss, the defendants must accept plaintiffs' allegation that Med-1 kept 75-80% of the fee as "profit," paid its attorneys 20-25% as a bonus, and apparently ignored all other legal overhead costs.

and that such a violation renders the otherwise reasonable fee unreasonable. However, the Indiana Rules of Professional Conduct do not create independent causes of action. *See* Liggett v. Young, … N.E.2d … Ind. 2007 ("The Rules of Professional Conduct have limited application outside of the attorney disciplinary process.").[10] The Plaintiffs' allegations are nothing more than an attempt to sue an attorney for violation of the Rules of Professional Conduct where no fiduciary relationship otherwise exists.

Again, the reasonableness of an award for attorneys' fees on a contract is based upon the reasonable value of such services in the community in which they are rendered. The plaintiffs do not contend that $375 is excessive for filing and prosecuting a small claims action in Indianapolis. What the client, the lawyer, and the lawyer's employer contractually agree to do with a reasonable fee after it is collected is irrelevant.

2. *The Plaintiffs Have Failed to State a Claim against the Defendant-Attorneys Personally as They Were Acting as Employees of Med-1*

Plaintiffs have individually named defendants Niper, Gaber and Huston and alleged that the three individuals are duly-licensed attorneys and salaried employees of Med-1. (Complaint, ¶ 10). Plaintiffs FDCPA claims must be dismissed against the three individual defendants as the FDCPA does not apply to employees of a corporate debt collector in their individual capacities. White v. Goodman, 200 F.3d 1016, 1019 (7th Cir. 2000) (FDCPA "is not aimed at the shareholders of debt collectors operating in the corporate form unless some basis is shown for piercing the corporate veil."); Ernst v. Jesse L. Riddle, P.C., 964 F.Supp. 213, 216 (M.D.La. 1997) (Attorney-employee of debt collector was not proper party individually as Congress did

[10] The Liggett opinion was issued on December 4, 2007, and has not yet been paginated in the North Eastern Reports. It can be found at the Westlaw citation 2007 WL 4239590.

not intend to supplant state corporate law and FDCPA cannot supplant corporate form); Pettit v. Retrieval Masters Creditors Bureau, Inc., 211 F.3d 1057, 1060 (7th Cir. 2000).

In Pettit, the Seventh Circuit noted that individuals do not become "debt collectors simply by working for or owning stock in debt collection companies." Id. at 1059. The Court further held that the FDCPA "does not contemplate personal liability for shareholders or employees of debt collection companies who act on behalf of those companies, except in limited instances where the corporate veil is pierced." Id. The complaint demonstrates that Niper, Gaber and Huston were acting in their capacities as salaried employees of Med-1. Plaintiffs have made no allegation that they were involved in the type of conduct that would permit this court to disregard the corporate form. Thus, even if the Court accepts that there is jurisdiction and that a valid claim has been stated under the FDCPA, the Court should dismiss defendants Niper, Gaber and Huston for failure to state a claim.[11]

---

[11] The Seventh Circuit has noted that inclusion of improperly named defendants without any credible argument for liability under the FDCPA is sanctionable as an abusive practice. Goodman, 200 F.3d at 1019. In Goodman, the plaintiff filed an FDCPA suit and named the creditor [Book-of-the-Month Club], its collection agency [North Shore], a shareholder of North Shore and a company that stuffs and mails envelopes for North Shore. Id. Writing for the panel, Judge Posner noted,

> So far as the joinder of defendants other than North Shore and Book-of-the-Month Club is concerned, the suits are frivolous and the plaintiffs, represented by an experienced practitioner in consumer finance litigation, should have been sanctioned for what amounts to malicious prosecution. The Fair Debt Collection Practices Act is not aimed at the shareholders of debt collectors operating in the corporate form unless some basis is shown for piercing the corporate veil, which was not attempted here. The joinder of these defendants illustrates the all-too-common abuse of the class action as a device for forcing the settlement of meritless claims and is thus a mirror image of the abusive tactics of debt collectors at which the statute is aimed. Id. (internal citations omitted).

Defendants contend that the inclusion of the attorney-defendants individually is frivolous and they reserve the right to seek sanctions in the event the plaintiffs force further litigation or legal expense addressing the issue of their individual liability. Further, defendant Huff reserves the

3. *Plaintiffs' State Law Tort Theories, in Addition to Being Barred by the Rooker-Feldman Doctrine, Fail to State Viable Claims*

Plaintiffs have brought state tort claims for (1) unjust enrichment; (2) fraud; and (3) money had and received. The claim against Huff individually is derivative and asks the Court to pierce the corporate veil in the event liability is founded on one of the other claims. All three state tort theories seek a single relief: refund of monies paid under the state court small claims judgments, and for this reason the Court lacks subject matter jurisdiction to resolve them. In the alternative, Defendants ask this Court to decline to exercise supplemental jurisdiction over the claims. In the event the Court decides to address the merits of the state claims, each count fails to state a claim for relief under controlling state tort law.

The only basis for federal jurisdiction over the state claims is 28 U.S.C. § 1367, which allows federal courts to decide state-law claims in the absence of diversity jurisdiction if the state law claims are so closely related to the federal law claims as to be considered a part of the same case. Williams Electronics Games, Inc. v. Garrity, 479 F.3d 904, 906 (7th Cir. 2007). A District Court may decline to exercise supplemental jurisdiction over state claims if (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it had original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

As argued in the foregoing sections, the plaintiff's FDCPA claims (the only claims bestowing original jurisdiction) should be dismissed under the Rooker-Feldman Doctrine. Consequently, there is no federal claim and this Court may decline to exercise jurisdiction under

---

right to seek sanctions in the event plaintiffs and their attorneys do not have any evidence tending to support the allegations of their complaint that he committed a fraud so severe as to permit piercing Med-1's corporate veil.

28 U.S.C. § 1367(c)(3). The Seventh Circuit has instructed that there are only three situations where state law claims should be retained even though the federal claims have been dismissed: (1) where the statute of limitations would bar refilling in state court; (2) where substantial federal judicial resources have already been expended on resolution of the state law claims; and (3) where it is obvious how the claims should be decided. Garrity, 479 F.3d at 906-07, *citing* Wright v. Associated Ins. Cos., 29 F.3d 1244, 1251-52 (7th Cir. 1994).

Here, there is no statute of limitations problem as the Plaintiffs are within either a two-year or six-year statute of limitations for state tort theories. Further, even if there were a problem, 28 U.S.C. § 1367(d) provides a 30-day window for the Plaintiffs to refile. Second, this case is in the very early stages and substantial federal judicial resources have not been expended. Third, it is certainly not obvious that the plaintiffs can recover on the state tort theories. As outlined in the preceding sections, this entire litigation—including the state torts—rests upon a faulty foundation: Plaintiffs' incorrect assumption that the attorney's fee awards issued by state court are "unreasonable." Further, there exist significant collateral estoppel and res judicata problems for the Indiana tort claims, as argued below. The state torts are essentially collateral attacks on valid state court judgments, and are subsequently barred.

This Court would be acting well within its discretion to decline to exercise supplemental jurisdiction over the state tort theories. Garrity, 479 F.3d at 907-08 (affirming district court's decision to decline supplemental jurisdiction on remand even after state law claims were initially tried to district court).

However, should this Court decide to exercise supplemental jurisdiction, the plaintiffs have failed to state viable causes of action under Federal Rule of Civil Procedure 12(b)(6).

(A) Unjust Enrichment Founded upon the Rules of Professional Conduct Fails to State a Claim

In order to prevail on a claim of unjust enrichment, a plaintiff must show that a measurable benefit has been conferred upon the defendant under circumstances in which retention of the benefit by the defendant would be unjust. Wright v. Pennamped, 657 N.E.2d 1223, 1229 (Ind.Ct.App. 1995). The Plaintiffs premise their claim for unjust enrichment on the (alleged) violation of the Rules of Professional Conduct. They assert that the enrichment of the defendants was "unjust" because it violated these rules. As laid out above, the Rules of Professional Conduct cannot form the basis of an independent action. Ind. R. Prof. Conduct, Preamble ("Violation of a Rule [of Professional Conduct] should not itself give rise to a cause of action against a lawyer…"); *see* Liggett, … N.E.2d at *1.

Furthermore, the state court doctrines of res judicata and collateral estoppel would bar any cause seeking to refund monies paid on a judgment without first moving to set aside the judgment, or filing an independent action for fraud in procuring the judgment. *See* Ind. Small Claims Rule 11 (Small claims judgments have res judicata effect as to amount of money awarded).

(B) Plaintiffs' Fraud Claim is Barred by Res Judicata

The plaintiffs claim for common law fraud is premised upon alleged fraud by Med-1 and its attorneys in falsely representing the amounts of attorneys' fees and Med-1's entitlement to those fees. Indiana recognizes that an action for fraud premised upon a defendant's acts in fraudulently procuring a judgment is governed by Indiana Trial Rule 60(B). Shepherd v. Truex, 823 N.E.2d 320, 324-25 (Ind.Ct.App. 2005); Stonger v. Sorrell, 776 N.E.2d 353, 355-57 (Ind. 2002) (adopting federal procedure under FRCP 60(B) for analysis of Indiana trial rule 60(B)).

Thus, plaintiffs' action for fraud is nothing more than an independent action to set aside a judgment due to alleged fraud upon the court. Indiana does permit a party to collaterally attack a judgment by filing an independent action for fraud, Stonger, 776 N.E.2d at 356-57; however, the action is limited to only the "most egregious of circumstances." Shepherd, 823 N.E.2d at 325. As the Court of Appeals has summarized,

> [A party asserting a claim for fraud upon the court] must establish that an unconscionable plan or scheme was used to improperly influence the court's decision and that such acts prevented the losing party from fully and fairly presenting its case or defense. Id.

The requirement of prejudice is a necessary element. A party must be able to show that it was prevented from litigating its claim or defense by the fraud; otherwise, the claim for fraud on the Court would be nothing more than an attempt to re-litigate an issue from the prior trial. Id. at 326. ("[A]n independent action, which in many circumstances is a collateral attack on a judgment, is subject to the doctrine of res judicata. Under such a doctrine, what actually was and could have been litigated in the underlying proceeding may not be relitigated in an independent action to set aside the judgment.") (internal citations and quotations omitted).

Here, the plaintiffs contend that fraudulent representations were made to the Court regarding the amount of attorneys' fees owed to Med-1. This was an issue squarely within the competence of the various small claims actions. In Shepherd, an unsuccessful litigant filed a fraud action against his adversaries' attorneys, claiming that they filed false affidavits. Id. The Court of Appeals rejected the claim and affirmed judgment on the pleadings for the defendant lawyers. Id. at 327. The Court reasoned that the plaintiff could have contested the affidavits in the underlying action, but elected not to. The facts are precisely analogous here. The plaintiffs could have contested the claim for attorneys' fees before the Hamilton County Small Claims Court. They chose not to litigate the matters.

The plaintiffs have failed to state a claim for fraud under Indiana law as their action is nothing more than a collateral attack on a judgment. They cannot show that they were prevented from mounting a defense to the claims filed against them.[12]

(C) Plaintiffs Claim for Money Had and Received Fails as a Matter of Equity

Plaintiffs additionally assert a claim for the equitable remedy of Money Had and Received, essentially arguing that they have a legal right to the money and the defendants inequitably took it. *See* Harrold v. Markin, 145 Ind.App. 619, 252 N.E.2d 159, 623-24 (1969). An action for Money Had and Received lies where one party has received money either from the plaintiff or from third persons "under such circumstances that in equity and good conscience he ought not to retain the same." Id. Indiana requires a plaintiff to show both (1) that the money properly belongs to him; and (2) the money was received through a promise or contract involving mistake of facts, lack of consideration or failure of consideration. Id. Setting aside the blatant jurisdictional problem that arises when a plaintiff asks a federal court to equitably return money awarded by a facially valid state court judgment, the cause has no applicability to this matter as plaintiff cannot show either element.

First, the plaintiffs contractually agreed to pay St. Vincent the attorneys' fees. They dispute whether Med-1 is entitled to seek the monies; however, there is no dispute on the

[12] In their complaint, the plaintiffs do not differentiate between actual and constructive fraud. However, in their motion for summary judgment, they claim both. They concede, on page 19 of this brief, that a special or fiduciary relationship must exist between the parties in order for a constructive fraud to occur. They offer no theory (and certainly have pled no theory in their complaint) that would allow the Court to infer that the attorney for a civil plaintiff owes a fiduciary duty to a civil defendant. To the extent the plaintiffs claim that they have pled constructive fraud, they have failed to allege the fiduciary obligation necessary to impose liability. *See* Comfax v. North American Van Lines, Inc., 587 N.E.2d 118, 125 (Ind.Ct.App. 1992).

complaint that St. Vincent had a contractual right to the fees. The money in this sense does not "belong" to the plaintiffs at all. Second, and more importantly, the equitable remedy of Money Had and Received must be premised upon a contract between the parties, not upon an adversarial legal proceeding. The plaintiffs have not alleged failure of consideration or lack of consideration or mistake of fact on their contracts with St. Vincent. The contract is not the basis of their claim for inequitable conduct and they do not allege any inequity in the forming of the contract.

Finally, as with the claim for unjust enrichment, the state court doctrines of res judicata and collateral estoppel would bar any equitable remedy seeking to refund monies paid on a judgment without first moving to set aside the judgment. *See* Ind. Small Claims Rule 11 (Small claims judgments have res judicata effect as to amount of money awarded).

## V. CONCLUSION

For the foregoing reasons, this Court lacks subject matter jurisdiction over the plaintiff's claims. Further, the plaintiffs have failed to state viable causes of action against the defendants. Accordingly, this cause of action should be dismissed in its entirety.

KIGHTLINGER & GRAY, LLP

s/<u>Peter A. Velde</u>
Peter A. Velde #949-49
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2007, I electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Glenn S. Vician
Bowman, Heintz, Boscia & Vician P.C.
8605 Broadway
Merrillville, IN 46410

Robert Stochel
Hoffman & Stochel
Suite 306 One Professional Center
Crown Point, IN 46307

s/Peter A. Velde
Peter A. Velde

KIGHTLINGER & GRAY, LLP
Market Square Center, Suite 600
151 North Delaware Street
Indianapolis, IN 46204
317/638-4521